IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:14-CV-00200-RN

**Charlene M. Jones**,

                              Plaintiff,

v.                                                        **Memorandum & Order**

**Carolyn Colvin**, Acting Commissioner of
Social Security,

                              Defendant.

        Plaintiff Charlene M. Jones instituted this action on October 20, 2014, to challenge the

denial of her application for social security income.  Jones claims that Administrative Law Judge

McArthur Allen erred in evaluating her credibility, in misevaluating the opinion evidence, and in

failing to account for all of her impairments in both the residual functional capacity ("RFC")

assessment and in the hypothetical questions posed to the Vocational Expert ("VE").  Both Jones

and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions

seeking a judgment in their favor.  D.E. 19, 25.

        After reviewing the parties' arguments, the court has determined that ALJ Allen erred in

his decision.  Although ALJ Allen properly evaluated the medical opinion evidence, neither his

credibility determination nor the RFC assessment is supported by substantial evidence.

Therefore, the court grants Jones's Motion for Judgment on the Pleadings, denies Colvin's

Motion for Judgment on the Pleadings, and directs that the Commissioner's final decision be

remanded for further consideration.

## I.    Background

On February 23, 2010, Jones filed an application for disability insurance benefits on the basis of a disability that allegedly began on January 25, 2010.  After her claim was denied at both the initial stage and upon reconsideration, Jones appeared before ALJ Allen for a hearing on August 17, 2011.  ALJ Allen determined that Jones was not entitled to benefits because she was not disabled.  On appeal, the Appeals Council remanded to ALJ Allen for further consideration of Jones's RFC.  Jones appeared for a second hearing before ALJ Allen on January 10, 2013.  ALJ Allen again determined that Jones was not entitled to benefits because she was not disabled.  Tr. at 22–38.

In his decision, ALJ Allen found that Jones had the following severe impairments: depression and anxiety.  *Id*. at 25.  ALJ Allen also found that her impairments, alone or in combination, did not meet or equal a Listing impairment.  *Id.*  ALJ Allen determined that Jones had the RFC to perform light work with the following limitations: she can never climb ropes, ladders, or scaffolds; she should avoid hazards such as dangerous machinery; she should avoid concentrated exposure to fumes, dust, heat, moisture, and pulmonary irritants; she can perform simple, routine, repetitive tasks in a low-production environment; and she should only have occasional contact with coworkers and the general public.  *Id.* at 27.  ALJ Allen also stated that "a low stress environment is further defined as work that requires no complex decision-making, constant change, or dealing with a crisis situations."  *Id.*  ALJ Allen concluded that Jones was unable to perform any past work, but that, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing.  *Id.* at 36–37.  These jobs included: garment sorter, photocopy machine operator, and ticket checker.  *Id.* at 37.  Thus, ALJ Allen found that Jones was not disabled.  *Id.*

at 38. After unsuccessfully seeking review by the Appeals Council, Jones commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on October 20, 2014. D.E. 6.

## II.     Analysis

### A.     Standard for Review of the Acting Commissioner's Final Decision

When a social-security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B.     Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650, 653–54 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, then, at step four, the

3

claimant's RFC is assessed to determine whether the claimant can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Evidence

Jones was treated at the Emergency Department of Lenoir Hospital on January 25, 2010, for an overdose and suicidal ideation. Tr. at 427. She was transferred to the care of Dr. Michael Nunn at Dulphin General for inpatient care from January 26, 2010, to February 2, 2010. *Id.* at 440–60. Her Global Assessment of Functioning ("GAF")[1] score was 15 upon admission and 60 at discharge. *Id.* at 440. Her diagnosis at discharge was severe and chronic major depression. *Id.* at 441.

The following week, Jones's GAF score was 45. *Id.* at 476. She stated that she was afraid of returning to work and she did not want to deal with others. *Id.* Two days later, Jones had a flat mood, appeared sad, and stated she was having memory problems. *Id.* Her GAF score

---

[1] The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The scale ranges from 0 to 100, with serious impairment in functioning at a score below 50. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2002) ("DSM–IV"). A GAF score of 11–20 reflects an individual with "some danger of hurting self or others or occasionally fails to maintain minimal personal hygiene or gross impairment in communication." *Id.* A score of 31–40 indicates "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id.* A GAF score of 41–50 indicates "[s]erious symptoms . . . [or] any serious impairment in social, occupational, or school functioning." *Id.* A score of 51–60 indicates "moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

was 40.  *Id.* at 477.  On February 17, 2010, Jones saw Dr. Lori Scott, her primary care physician at Lenoir Family Medicine.  Dr. Scott diagnosed her with anxiety, prescribed medication, and advised her to seek counseling.  *Id.* at 505.  On April 7, 2010, Jones reported to Dr. Scott that she was "doing wonderful" and Dr. Scott noted that she had an appropriate affect and demeanor.  *Id.* at 494–95.

Dr. Jerome B. Albert, a consulting examiner, evaluated Jones on April 10, 2010.  *Id.* at 479–81.  Dr. Albert noted that Jones appeared sad and anxious and that she scored in the range of severe depression.  *Id.* at 480.  Dr. Albert assessed her GAF score between 45 and 50.  *Id.* at 481.  He opined that she could understand, retain, and follow simple directions, that she could get along well with coworkers in a low-stress job, but that it would be difficult for her to tolerate the stress and pressures associated with day-to-day work activities.  *Id.*  Dr. Albert questioned how long Jones would be able to sustain attention to perform repetitive tasks.  *Id.*

On May 4, 2010, Disability Determination Services reviewer John J Parsley, Psy.D., performed a psychological assessment and found that Jones had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, and pace.  *Id.* at 95.  Dr. Parsley opined that Jones could carry out short, simple instructions and that she could maintain concentration for two hours.  *Id.* at 97.  He also noted that Jones would require a low-stress, low-social work environment.  *Id.* at 98.

In June 2010, Jones reported to Dr. Scott that she was not doing well.  *Id.* at 492–93.  Dr. Scott found that she had a depressed affect and demeanor.  *Id.*  A July 9, 2010, assessment by State agency physician Dr. Walter Scarborough found that Jones was moderately limited in activities of daily living, social functioning, and maintaining concentration, persistence, and

5

pace. *Id.* at 108. He also found that Jones would require minimal interpersonal demands, a relatively stable work setting, and that she could sustain attention to perform simple, routine, repetitive tasks. *Id.* at 107–12. On July 21, 2010, Dr. Janet Hunter-Johnson performed a review and found that Jones could understand and remember simple tasks but that she had moderate limitations in her ability to maintain concentration and attention for extended periods, moderate limitations in social interactions, and that she could sustain the concentrations, persistence, and pace required to perform simple, routine, repetitive tasks. *Id.* at 111–12.

Office treatment records from Dr. Fernando Mendez at Lenoir Family Medicine indicate that Jones was suffering from severe depression with suicidal ideation in July 2010. *Id.* at 490. In November, based on Jones's statements, Dr. Mendez found that she was markedly impaired in her ability to maintain attention and concentration and that she was extremely impaired in her ability to work with others and interact with the general public. *Id.* at 516. In December 2010, Jones reported that she was doing better, but Dr. Mendez noted she continued to have lingering depressive symptoms. *Id.* at 520–22. In June 2011, Jones reported that her depressive symptoms were getting worse and Dr. Mendez increased her medication. *Id.* at 517–19. Jones was seen again at Lenoir Family Medicine in August 2011 for a follow-up appointment for her severe depression. *Id.* at 532–43. Although psychological counseling was recommended, Jones did not feel that she could afford it. *Id.* at 544. Dr. Mendez also noted that while medications had improved her condition, Jones's depression remained severe. *Id.* at 546.

Jones received inpatient treatment at Wayne Memorial Hospital from November 1, 2011, to November 7, 2011, for suicidal ideations. *Id.* at 635–57. Her GAF score was 35 upon admission and 45–50 at discharge. *Id.* at 636–38. In December 2011, Jones's GAF score was 50. *Id.* at 571. Jones thereafter received follow-up care from Dr. Meredith Godwin at Wayne

Health Psychiatric Services on two occasions. *Id.* at 568–71. She had improved mood, intact cognition and was assessed a GAF score of 50. *Id.*

Jones received counseling from PORT Human Services, which noted on May 9, 2012, that she had depressed mood and poor concentration. *Id.* at 552–53. Jones continued to experience depression and on July 16, 2012, she voluntarily committed herself to Vidant Medical Center for six days. *Id.* at 598–633. Jones subsequently reported to her therapist that she was no longer working due to her anxiety and that she felt guilt, shame, and embarrassment over her inability to work. *Id.* at 560. On August 3, 2012, Dr. Marshall Barker with PORT Human Services noted that Jones had marked restrictions in activities of daily living and in social functioning, that she had deficiencies in concentration, persistence, and pace, and that she was markedly impaired in her ability to interact appropriately with the general public. *Id.* at 565–66. He also found that she was markedly impaired in her ability to maintain concentration and attention for extended periods and in her ability to complete a normal workweek. *Id.*

Jones was noted to be making progress on August 23, 2012, but by December 2012, she was tearful and worrying about her inability to work. *Id.* at 576, 581.

### D.    RFC and Hypothetical Questions

Jones contends that ALJ Allen erred in the hypothetical questions to the VE. Specifically, she argues that ALJ Allen determined that she had moderate difficulties in concentration, persistence, and pace, but failed to account for these limitations when questioning the VE as to other jobs that she could perform. ALJ Allen asked the VE to assume a hypothetical individual who was "limited to simple, routine, repetitive tasks [and] should work in a low production occupation, one which would require no complex decision making, constant change or dealing with crisis situations." Tr. at 86. Jones contends that the hypothetical

question fails to consider her limitations in her ability to maintain concentration, persistence, and pace. The Commissioner argues that a limitation to low-production work environment with no complex decision making, constant change or dealing with crisis situations sufficiently accounts for a moderate limitation in the ability to maintain concentration, persistence, and pace.

In *Mascio v. Colvin*, the Fourth Circuit joined the Third, Seventh, and Eighth Circuits by holding that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d 632, 638 (4th Cir. 2015) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit noted that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Because the ALJ in *Mascio* found at step three that the claimant had limitations in this functional area, but did not account for such limitations in the hypothetical questions at step five, the Fourth Circuit found that remand was appropriate. *Id.*

The Commissioner asserts that *Mascio* is distinguishable from the present case because *Mascio* held that simple, routine tasks or unskilled work did not account for limitations in concentration, persistence or pace. Here, however, ALJ Allen did not simply limit her to simple, routine, repetitive tasks. Instead, the Commissioner maintains, ALJ Allen accounted for Jones's limitations in concentration, persistence, and pace by including in the hypothetical question the limitations for low-stress, low-production work without complex decision-making, constant change, or crisis situations. Although *Mascio* does not address whether such limitations account for moderate difficulties in this functional area, other courts have held that a limitation in production standards accounts for moderate difficulties in maintaining concentration,

persistence, and pace. *See Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) (holding that a hypothetical question that referenced an individual who "would not have a quota to fulfill" accounted for moderate difficulties in concentration, persistence, and pace); *Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) (holding that the ALJ captured her moderate limitation in concentration, persistence, and pace when he included a restriction of "no high production goals").

Of the North Carolina federal district courts to address this issue from *Mascio*, all but one found that remand was warranted because the limitation in concentration, persistence, and pace was not accounted for in the RFC and/or hypothetical question to the VE. *See Franklin v. Colvin*, No. 5:14-cv-84-MOC-DLH, 2015 WL 4510238, at * 2 (W.D.N.C. July 24, 2015) (remanding for further proceedings where ALJ found claimant had moderate difficulties in concentration, persistence, and pace, but failed to connect such limitations to the RFC that found he could perform "simple, one-two step tasks in a low stress environment, defined as one that does not involve production/assembly-line/high-speed work or contact with the public"); *Hagerdorn v. Colvin*, No. 2:12-cv-29-RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015) (finding that limitations to simple, routine, and repetitive tasks in a low-production, low-stress work setting, defined as occasional change in job setting or decision making, did account for some of claimant's mental limitations, such as the ability to understand, carry out, and remember instructions, respond appropriately to work situations, and deal with changes in a routine work setting, but not for his moderate limitations in concentration); *Scruggs v. Colvin*, No. 3:14–cv–00466–MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (finding that an ability to perform simple, routine, repetitive tasks in a nonproduction environment, without more, does not account for claimant's moderate difficulties in concentration, persistence and pace); *Raynor v.*

*Colvin*, No. 5:14–CV–271–BO, 2015 WL 1548996, at *2 (E.D.N.C. Apr. 7, 2015) (remanding where the hypothetical posed to the VE did not pose any limitations related to concentration and persistence other than limiting plaintiff to simple, routine tasks and the ALJ's written decision limited plaintiff to work with simple instructions and work-related decisions as well as no fast-paced production); *Salmon v Colvin*, No. 1:12-cv-1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (holding that a hypothetical limiting claimant to "simple, routine, repetitive tasks in that [she] could apply commonsense understanding to carry out instructions furnished on a written, oral, or diagrammatic form" did not account for claimant's moderate limitations in concentration, persistence and pace and did not address her ability to say on task). *But see Linares v. Colvin*, No. 5:14-cv-120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (distinguishing *Mascio* where ALJ limited claimant to simple, routine, repetitive tasks but also limited her to a stable work environment at nonproduction pace with only occasional public contact because the nonproduction pace addressed her limitations in pace and the stable work environment with only occasional public contact addressed her limitation in concentration and persistence).

In the present case, as noted above, the hypothetical question to the VE contemplated an individual "limited to simple, routine, repetitive tasks; should work in a low production occupation, one which would require no complex decision making, constant change or dealing with crisis situations." The majority of courts in North Carolina, including this court, have held that such restrictions do not adequately address a claimant's moderate limitations in concentration, persistence and pace. *See Franklin*, 2015 WL 4510238; *Hagerdorn,* 2015 WL 4410288; *Scruggs,* 2015 WL 2250890; *Raynor*, 2015 WL 1548996; *Salmon,* 2015 WL 1526020.

Given these cases, remand for further consideration of Jones's moderate limitations in concentration, persistence, and pace as they impact other work is appropriate.

Further, in discussing whether Jones established the "paragraph B" criteria[2] at step three, ALJ Allen found that she had moderate limitations in concentration, persistence, and pace.[3] Tr. at 26. ALJ Allen noted that both the consultative examiner and the State agency psychologist found that she could understand, retain, and follow simple directions necessary to perform routine, repetitive tasks. *Id.* He further noted that the evidence also indicated that Jones could get along with coworkers and supervisors in a low-stress job and could avoid dangers in the environment. *Id.* ALJ Allen observed that recent therapy notes indicated that Jones was doing well with medication, that she showed some progress in treatment, and that she had stated she felt good after a recent family trip. *Id.* Accordingly, ALJ Allen limited her to simple, routine, repetitive tasks in a low-production environment, with no complex decision-making, constant change, or dealing with crisis situations, and with only occasional contact with coworkers and the general public. *Id.* Later in his discussion, ALJ Allen stated that while Jones may retain

---

[2] At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et. seq.*, pertaining to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Each listing therein consists of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. Id. § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.* Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.

[3] The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(3).

some functional limitations related to her mental health impairments, the RFC assessed accommodates these limitations. *Id.* at 36.

Although the ALJ's findings at step three may not require any additional limitations for concentration, persistence, or pace in the RFC, the ALJ must at least provide a sufficient explanation in the decision to allow the court to conduct meaningful review of the RFC determination. *See Scruggs*, 2015 WL 2250890, at *5; *Reinhardt v. Colvin*, No. 3:14–cv–00488–MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015). However, ALJ Allen's decision does not explain how he accounted for the moderate limitations in concentration, persistence, and pace when formulating Jones's RFC. His step-three discussion determining whether her impairments meet a Listing does not sufficiently address the limitations in concentration, persistence and pace as they relate to the RFC as required by *Mascio*. ALJ Allen should specifically state how the RFC determination reflected Jones's limitations in concentration, persistence, and pace[4] and whether ALJ Allen determined that the moderate limitations in concentration, persistence, and pace had no impact on Jones's ability to work. Accordingly, remand for further consideration of Jones's limitations in maintaining concentration, persistence, and pace is warranted.[5]

## E.    Credibility

Jones argues that ALJ Allen erred in evaluating her credibility. She contends that ALJ Allen erred in using boilerplate language, which suggested that her RFC was determined before

---

[4] Given the case law cited above, it would be seem that the RFC limitation, as stated, could not account for moderate limitations in concentration, persistence, and pace.

[5] ALJ Allen also noted that while Jones may retain some functional limitations related to her mental health impairments, the RFC accommodated these limitations. Tr. at 36. This does not sufficiently explain the assessed mental limitations as they relate to Jones's RFC determination, as required by *Mascio*.

her credibility. The Commissioner contends that ALJ Allen's language indicates that he did not make the RFC determination before assessing Jones's credibility.

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig v. Chater*, 76 F.3d 585, 593–96 (4th Cir. 1996); 20 C.F.R. § 404.1529(a)-(c); S.S.R. 96–7p, 1996 WL 374186, at *1 n.1; 2 (July 2, 1996). First, the ALJ must determine whether the claimant's medically-documented impairments could cause the claimant's alleged symptoms. S.S.R. 96–7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally-limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.*; *see also* 20 C.F.R. § 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find the claimant's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." S.S.R. 96–7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12-cv-1742, 2013 WL 1314781, at *7 (W.D. Pa. Mar. 28, 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

The questions presented are whether ALJ Allen improperly used boilerplate language and whether remand is warranted. In *Mascio.* the Fourth Circuit examined the ALJ's use of boilerplate language, stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

13

*Mascio*, 780 F.3d at 639.   The Fourth Circuit found that this boilerplate language improperly implied "that ability to work is determined first and is then used to determine the claimant's credibility."   *Id.* (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)).   The Regulations require that an ALJ compare a claimant's alleged functional limitations from pain to the other evidence in the record, not to his residual functional capacity.   *Id.*; 20 C.F.R. § 416.929(e).   The use of such boilerplate language would be harmless, however, if the ALJ properly analyzed credibility elsewhere in the decision.   *Id.*

In the present case, ALJ Allen's opinion, which was issued before the *Mascio* decision, stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause *some* of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision and the evidence fully supports the residual functional capacity assessed herein.

Tr. at 29.   The Commissioner contends that this language is different from the language criticized in *Mascio*.   She also maintains that ALJ Allen properly explained his credibility assessment.

To "properly analyze[ ] credibility," the ALJ must "explain how he decided which of [claimant's] statements to believe and which to discredit."   *Mascio*, 780 F.3d at 639–40.   Here, ALJ Allen appears to have discounted Jones's credibility based on several factors.   First, Jones had some improvements, but also some deteriorations, as her medical providers attempted to address her mental health impairments.   ALJ Allen noted that her condition improved in the five months prior to the hearing.   Tr. at 26.   While at times the evidence showed she was making progress, at other times Jones presented with increasingly depressive and anxious symptoms.   *Id.* at 28–34.   This is reflected in the GAF scores, which indicate some improvement but also some

14

moderate to serious impairment during the relevant period. Major depression and anxiety have consistently remained her diagnoses. Additionally, Jones received in-patient treatment for her mental health condition twice in this time period. In sum, her periods of improvement do not contradict the instances of impaired mental health.

Although Jones was able to work for a period of time, the medical records indicate that work stressors were a factor in her mental health condition. ALJ Allen noted that Jones had not followed up with therapy as recommended, but Jones testified that there were financial issues, which also was a situational factor affecting her mental health condition. *Id.* at 34. For ALJ Allen to discredit Jones's failure to attend therapy based on her inability to pay is error where Jones specifically cited financial constraints as the reason she did not attend. *See Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) ("A claimant may not be penalized for failing to seek treatment [he] cannot afford.").

ALJ Allen also discounted third-party statements, giving them little weight because they were neither functional nor diagnostic in nature. Tr. at 32. He also cited the lack of medical training by the individuals offering third-party statements and their relationship to Jones as interested parties as reasons to discount them. *Id.* He further found that the statements offered were not consistent with the totality of the evidence. *Id.* However, ALJ Allen's reasoning in evaluating the third-party statements is flawed.

In addition to acceptable medical sources, Social Security may use evidence from other sources, including spouses, to show the severity of an individual's impairment(s) and how it affects the individual's ability to function.

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may

provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

S.S.R. 06–03P, 2006 WL 2329939. "The mere fact that a family member is not a neutral party is an insufficient reason to reject her statements." *Massey v. Colvin*, No. 5:13–CV–459–D, 2014 WL 3845146, at *7 (E.D.N.C. June 17, 2014), *adopted*, 2014 WL 3845151 (E.D.N.C. Aug. 5, 2014). Furthermore, "[d]escriptions of friends and family members who were in a position to observe the claimant's symptoms and daily activities have been routinely accepted as competent evidence." *Morgan v. Barnhart*, 142 F. App'x 716, 731 (4th Cir. 2005) (quoting *Behymer v. Apfel*, 45 F. Supp. 2d 654, 663 (N.D. Ind. 1999)).

Accordingly, neither the third parties' relationships to Jones nor their lack of medical training are grounds to discount their statements. Further, although ALJ Allen found that these statements were inconsistent with the medical evidence of record, he cited Jones's statement that she could not handle the stress of work without her medication. Tr. at 32. ALJ Allen concluded this statement would mean that she would be able to handle the stress of work with medication. *Id.* Such an inference cannot be drawn, as the evidence shows that even when she was taking medications, Jones stated to medical providers that she was overwhelmed with work stressors.

Thus, the court cannot determine what evidence ALJ Allen properly relied upon that undermines Jones's credibility. In such instances, ALJ Allen's use of improper boilerplate language is not harmless where he failed to offer sufficient reasons to support his conclusion that she was not fully credible. Having failed to properly and thoroughly analyze Jones's credibility, ALJ Allen failed to cure any issue created from the use of problematic boilerplate language criticized in *Mascio*. As there is not substantial evidence to support ALJ Allen's credibility determination, this issue warrants remand.

### F. Medical Opinion Evidence

Jones argues that ALJ Allen failed to give any of the medical opinions substantial weight and that his RFC determination is less restrictive than any of medical opinions provided. The Commissioner maintains that an ALJ is not required to rely on a medical opinion in making the RFC finding.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998).

According to 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig*, 76 F.3d at 590 (finding that "if a physician's opinion in not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether one is disabled is not

dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(e)(1) (1998). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See* 20 C.F.R. § 404.1527(d)(3) (1998). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See* 20 C.F.R. § 404.1527(d)(4) (1998).

The court cannot conclude that ALJ Allen improperly considered the medical opinion evidence. In reviewing this evidence, ALJ Allen did not give any one opinion significant or controlling weight. Dr. Mendez opined that Jones had marked limitations in attention and concentration and that she had extreme impairments in her ability to work with others. Finding this assessment was based on Jones's subjective report, ALJ Allen afforded it little weight. Tr. at 33. ALJ Allen also noted that Dr. Mendez was not a specialist in mental health. *Id.*

Dr. Barker found that Jones had marked impairments in activities of daily living and in social functioning, that she had deficiencies in concentration, persistence, and pace, and that she had marked limitations in her abilities to interact and to maintain concentration and attention. Although ALJ Allen gave this opinion little weight because Dr. Barker had little contact with her, Jones asserts that his opinion is consistent with both his treatment notes and with the treatment notes of her therapist. However, his finding that she had marked limitations in activities of daily living was contradicted by Jones's own statements that she could care for her own personal needs, and that she drove, shopped, attended church, prepared meals and performed household chores. *Id.* at 26.

Dr. Albert determined that Jones could understand, retain, and follow simple directions and sustain attention to perform simple, routine, repetitive tasks. He also found that Jones would

have difficulty tolerating the stress and pressures of day-to-day work and that there was a question of how long Jones could sustain attention to perform simple tasks. *Id.* at 34–35. ALJ Allen gave this opinion some weight, noting that the findings supported the RFC assessment that found Jones could perform simple, routine, repetitive tasks in a low-stress environment with limited contact. *Id.* at 35. ALJ Allen also observed that, despite the assessed limitations, Jones was able to work for a period of time. *Id.*

State agency physicians Drs. Parsley and Scarborough both opined that Jones had moderate limitations in activities of daily living and social functioning. While Dr. Scarborough found that she was moderately limited in her ability to maintain concentration, persistence, and pace, Dr. Parsley found that Jones had marked limitations in this functional area. ALJ Allen generally agreed with these findings, but concluded that the medical record supported lesser limitations, noting the medical evidence established only mild limitation in activities of daily living. *Id.* He also noted that these assessments were performed shortly after Jones's January 2010 hospitalization. *Id.*

Jones also cites her low GAF scores, ranging from 15 to 60, as evidence of her poor mental state. Over the course of three years, these scores ranged from 15 to 60, with only two occasions, both following in-patient treatment, where her GAF was assessed at 50 or higher. Jones contends that her consistently low GAF scores coupled with her hospitalizations and the medical opinion evidence indicates that she is more limited than ALJ Allen determined.

In formulating the RFC, an ALJ need not adopt or even assign "great weight" to any of the medical opinions. *Felton–Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011). Instead, an ALJ is required to consider "all of the relevant medical and other evidence." *Id.* (determining that an ALJ need not obtain an expert medical opinion as to an RFC, but should

base an RFC on all available evidence). *See* 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3). The Commissioner asserts that the RFC finding is consistent with Dr. Scarborough's findings that Jones could cope in a low-stress, stable work environment; with Dr. Parsley's opinion that she could perform unskilled work in a low-stress, low-social environment; and with Dr. Albert's conclusions that she could perform simple, routine, repetitive tasks in a low-stress environment and could get along with others. ALJ Allen also found that Jones's return to work for approximately six months indicated that she could sufficiently sustain performance of simple tasks. Tr. at 35.

ALJ Allen also addressed Jones's low GAF scores, noting that while it is one of many diagnostic tools to rate a patient's functioning and can be used to plan treatment, the GAF scores are not to be used as a predominant factor to assess mental disability, because they can often be skewed by temporary or situational factors. *Id.* at 36–36. He further observed that Jones had situational stressors that would account for low GAF scores being assessed. *Id.* at 36.

ALJ Allen sufficiently explained his reasons for affording the weight he assigned to each medical opinion. Jones's argument essentially boils down to the contention that ALJ Allen incorrectly considered the evidence before him. Although Jones may disagree with the determinations made by ALJ Allen in weighing the medical opinions, the role of the court is not to re-weigh conflicting evidence or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589; *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). For these reasons, Jones has failed to demonstrate that ALJ Allen erred in evaluating the medical opinions as they related to the RFC determination. Accordingly, her argument is without merit.

### III.     Conclusion

For the forgoing reasons, the court grants Jones's Motion for Judgment on the Pleadings (D.E. 19), denies Colvin's Motion for Judgment on the Pleadings (D.E. 25), and directs that the Commissioner's final decision be remanded for further consideration.

Dated: August 13, 2015.

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE